**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> v. <br><br> **KEENAN LEE** | **No. 18 CR 869** <br><br> **Judge Manish S. Shah** |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, by JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, submits this sentencing memorandum and position paper as to sentencing factors regarding defendant Keenan Lee.

**I.  Introduction**

As a matter of sentencing procedure, the court initially must correctly calculate the advisory sentencing guideline range. The court must then consider the applicable § 3553(a) sentencing factors, select a sentence supported by the applicable facts, and adequately explain the selected sentence, including any variance from the guideline range. *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *United States v. Annoreno*, 713 F.3d 352, 357 (7th Cir. 2013). "[A] major [variance] should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50; *see also United States v. Smith*, 811 F.3d 907, 910 (7th Cir. 2016) ("the farther down the judge goes the more important it is that he give cogent reasons for rejecting the thinking of the Sentencing Commission").

### A. Advisory Sentencing Guideline Range

The government agrees with the probation officer's guideline calculations in the Presentence Investigation Report (PSR) — that after acceptance of responsibility, defendant Lee's Total Offense Level is 13, and his Criminal History Category is III, resulting in an advisory sentencing guidelines range of 18 to 24 months' incarceration. *See* PSR 9-33, 39.

### B. Statutory Sentencing Factors

In addition to the sentencing guidelines, the court is obligated to consider the following sentencing factors, among others, pursuant to 18 U.S.C. § 3553(a):

- § 3553(a)(1)—the nature and circumstances of the offense, and the history and characteristics of the defendant;

- § 3553(a)(2)—the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and

- § 3553(a)(6)—the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

The factors most pertinent to this case—the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence—are addressed below.

### 1.  Nature and Circumstances of the Offense

The PSR summarizes the circumstances of the offense as follows:

On the evening of May 11, 2018, a Confidential Informant (CI), advised a Chicago Police Department (CPD) Tactical Team Leader, with whom he had worked in the past, that the defendant was driving a Chevy Tahoe SUV en route to the area of 66th and Halsted Street in order to shoot rival gang members and had a pistol concealed in a hidden compartment underneath the cup holder between the driver's and passenger's seats of the Tahoe.

After locating the Tahoe where the CI said it would be, two CPD vehicles followed the vehicle to the 66th Street area. The officers followed the vehicle and observed it driving at a high rate of speed and making a sudden swerving motion off the expressway ramp without signaling. The CPD officers pulled the vehicle over due to the erratic driving. The CPD officers wore body cameras and captured the events of the traffic stop.

A CPD officer walked to the driver's side of the vehicle where he smelled cannabis smoke exiting from the vehicle. The CPD asked the defendant, who was driving the vehicle, and his passenger to exit the Tahoe and they complied. The defendant consented to a search of the vehicle. Police officers removed the cupholder from the center console and discovered a Smith & Wesson M&P Shield .40 caliber handgun in a hollowed-out space beneath the cupholder that was accessible to the defendant. The firearm contained a loaded magazine and a round in the chamber. The defendant acknowledged he did not have an Illinois FOID card or a Concealed Carry Permit.

A check on the status of the firearm confirmed it had been stolen in November 2016, during a home invasion in Springfield, Missouri. The defendant acknowledged in his plea agreement, and criminal history records confirm, the defendant had a previous conviction punishable by imprisonment for a term of more than one year, the firearm was manufactured outside Illinois, and the firearm traveled in interstate commerce prior to his possession of it, in violation of Title 18, United States Code, Section 922(g)(1).

During a telephonic interview, ATF Special Agent Kurt Bentley stated the instant offense resulted from a broader investigation of gang related activity in Chicago, Illinois. He confirmed both the defendant and his brother, Keron Lee, are noted members of the Black Disciples street gang.

3

> The CI was in communication with the defendant as part of this investigation. On the date of the defendant's arrest in the instant offense, the CI contacted the Chicago Police Department tactical unit as a result of the conversation he had with the defendant. During this conversation, the defendant had informed the CI that he was going to shoot rival gang members in retaliation for acts the rival gang member committed against his brother, Keron Lee.

PSR at 7.

As noted by the Probation Officer, Lee has declined to discuss the offense or submit a written version of the offense on the advice of counsel. *Id*. Should Lee submit a sentencing memorandum, or take a position at sentencing, that disputes that he is a leader of the Black Disciples street gang, or that the police had received reliable information that he was en route to shoot a rival gang member when he was stopped and arrested, the government is prepared to call CPD SGT Nicholas Cortesi, the Tactical Team leader who arrested Lee, as a witness at the sentencing hearing to verify those facts.

### 2. History and Characteristics of the Defendant

The government does not question the account of Lee's personal background and characteristics set forth in the PSR. It appears, however, that despite his mother's drug addiction and early death, and his father's health problems, Lee had a basically stable life with his father and siblings. Nonetheless, he became involved in gang life at an early age – the PSR recounts an unbroken 20 years' of drug use, possession, and dealing since he was approximately 14 years old, coupled with a complete disregard for ordinary traffic rules and regulations, which reflects Lee's

disregard of and disrespect for normal rules of conduct at the very least. Continuing to engage in this life became Lee's choice at some point in his late teens, as did carrying a loaded weapon when he was arrested. He alone is responsible for that conduct and should be held accountable for it.[1]

### 3. Just Punishment and Adequate Deterrence

The Probation Officer has recommended that Lee be sentenced to 24 months' incarceration, to be followed by three years' supervised release, for the reasons set forth in the PSR's Sentencing Recommendation, including the following summary of Lee's extensive criminal history:

> He has a fairly significant criminal history, represented by a criminal history category of III. He was first arrested at the age of 14, for possession of a stolen automobile and criminal trespass to vehicle. *He has in excess of 70 arrests, for offenses which vary from possession of a controlled substance, manufacture/delivery of controlled substances, theft of identity, assault, reckless conduct, resisting a peace officer, soliciting unlawful business, battery, aggravated discharge of a firearm, battery, attempted murder, aggravated battery and many traffic offenses. Most of the defendant's convictions were for controlled substance related offenses.* The advisory guideline range is derived from the defendant's criminal history category; the base offense level for being a felon in possession of a firearm; an enhancement for possessing a stolen firearm; and credit for acceptance of responsibility.
>
> * * *
>
> The defendant's criminal history is of great concern. Criminal records indicate the defendant is a noted gang member. He entered the criminal justice system at the age of 14, when he was arrested for possession of a stolen motor vehicle. The defendant's arrest history

---

[1] Although Lee does not have any convictions for crimes of violence, his arrest record and gang history indicate that he has been remarkably lucky over the last 20 years.

> mainly contains arrests for selling drugs, but includes other varied offenses, some of which were violent in nature. It is noted the defendant has a history of attempting to run or elude arrest on occasion, leading police officers to pursue him on foot. Finally, the defendant has a history of repeated violations while on probation and on bond pending prosecution, which shows a general disregard for the for the Court's directive.
>
> As to this offense, the probation department notes factors to be considered in sentencing. First, the offense stemmed from an underlying investigation for gang violence. On the day of the defendant's arrest, he had informed a CI that he was going to find and shoot rival gang members in retaliation for acts committed against his brother. The CI was able to contact the Chicago Police Department, who arrested the defendant before he was able to injure anyone. Second, through their investigation, special agents believe the defendant, a long-term Black Disciple street gang member has information pertaining to other illicit activity, which he declined to provide. Special Agent Bentley stated that while the defendant was cooperative during interviews and acknowledged his conduct in the offense of conviction, he did not provide further information which could have assisted in the broader investigation.

PSR Sentencing Recommendation at 1-2; emphasis added.

It is the government's position that Lee's guidelines criminal history category of III seriously understates his actual criminal conduct over the last 20 years, or the likelihood that he will commit other crimes. As the PSR noted in recommending 24 months' incarceration, "the probation department believes the defendant is not easily deterred." *Id*. at 2. The government therefore does not agree that a sentence of 24 months would reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence. The government therefore recommends that Lee receive get an upward departure to 36 months' incarceration to reflect his actual criminal conduct and history, as permitted by Guideline §

4A1.3(a)(1), in addition to the 3 year term of supervised release recommended by probation. Finally, the probation officer has recommended certain mandatory, discretionary, and special conditions of supervised release, and the government has no objection or suggested modification to any of those proposed conditions.

## II.     Conclusion

For the foregoing reasons, the government respectfully recommends that the Court impose a sentence of 36 months' incarceration on defendant Lee, to be followed by 3 years' supervised release with the conditions recommended by the PSR.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:     */s/William R. Hogan, Jr.*
      WILLIAM R. HOGAN, JR.
      Assistant United States Attorney
      219 S. Dearborn Street
      Chicago, Illinois 60604
      312-886-4185